IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **AMANDA SIMPSON** | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. |
| **WHITNEY BARRETT**, in her individual capacity; **DAVID J. SALUM**, in his individual capacity; **WILLIAM E. FRANKLIN**, in his individual capacity; | ) **JURY TRIAL DEMANDED** |
| *Defendants*. | ) |

## COMPLAINT

### Introduction

Plaintiff Amanda Simpson was severely beaten by a cowardly Elmore County Sheriff's Office sergeant who likely acted out of hurt feelings. Ms. Simpson had been taken to jail for the first time in her life after more than forty years without a single conviction of any crime. When she arrived at the jail, she was confused and did not understand the process. She asked questions. For example, she wanted to know why she was required to submit to a breathalyzer test. In one response to one female officer's question, Ms. Simpson inadvertently responded, "Yes sir."

That one response triggered Whitney Barrett, a defendant law enforcement official in this case. Barrett's demeanor devolved into an uncontrollable rage. While Ms. Simpson was in handcuffs, Barrett punched her multiple times—so hard that Ms. Simpson's hat flew off her head. Ms. Simpson was left spitting blood from her mouth after another punch from

Defendant Barrett. But Defendant Barrett did not stop there. She took Ms. Simpson to another part of the jail where she snatched a chunk of Ms. Simpson's hair out and slammed her head against the wall causing her head to bleed. Ms. Simpson alleges, among other claims, excessive force and seeks to hold Defendant Barrett and those who watched and/or ratified her acts accountable.

## Parties

1. Plaintiff, Amanda Simpson is over the age of nineteen and a resident of the Middle District of Alabama.

2. At all times relevant, Defendant Whitney Barrett was over the age of nineteen and was a resident of the Middle District of Alabama. At all relevant times, she was employed as a law enforcement officer with the Elmore County, Alabama Sheriff's Office.

3. Defendant David Salum is a resident of the Middle District of Alabama and at all relevant times was employed as a law enforcement officer with Elmore County, Alabama Sheriff's Office.

4. Defendant William E. "Bill" Franklin served as Sheriff of Elmore County at all relevant times and is a resident of the Middle District of Alabama.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Ms.

Simpson's state law claims pursuant to 28 USCS § 1367, as they form part of the same case or controversy.

6. This Court has personal jurisdiction over defendant Whitney Barrett as she is a resident of the Middle District of Alabama.

7. This Court has personal jurisdiction over defendant David Salum as he is a resident of the Middle District of Alabama.

8. This Court has personal jurisdiction over defendant Bill Franklin as he is a resident of the Middle District of Alabama.

9. This Court is the proper venue for this case pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in Elmore County, Alabama, which is located within the Northern Division of the Middle District of Alabama.

## Statement of Facts

10. On October 31, 2023 Ms. Simpson was driving home when she was pulled over by Elmore County Sheriff's Deputy David Salum.

11. Deputy Salum stated that the purpose for the stop was an expired tag. Ms. Simpson had simply forgotten to get her tag renewed.

12. Deputy Salum arrested Ms. Simpson for outstanding misdemeanor warrants arising from a family dispute.

13. Ms. Simpson was unaware that she had a criminal complaint filed against her by a family member or warrant for her arrest.

14. Ms. Simpson had no prior convictions for any crime on the date of her arrest.

15. Ms. Simpson was transported to the Elmore County, Alabama Jail, and upon her arrival, she encountered law enforcement officer Whitney Barrett.
16. While in handcuffs, Ms. Simpson was ordered to sit on a lobby bench as Barrett began asking her questions.
17. Ms. Simpson was not able to readily discern whether Barrett was male or female, so in response to a question Barrett asked, Ms. Simpson answered, "Yes sir."
18. Other officers who witnessed this interaction began laughing.
19. Immediately after answering "Yes sir," Barrett punched Ms. Simpson in her eye.
20. Barrett struck Ms. Simpson so hard with this first punch that Ms. Simpson's hat came off her head.
21. Ms. Simpson tried to explain to Barrett that she did not mean to disrespect her with her response, but as she was attempting to explain, Barrett punched her in the mouth.
22. Barrett struck Ms. Simpson so hard with the second punch that Ms. Simpson's mouth was bleeding, causing her to spit blood.
23. After Ms. Simpson was hit in the mouth, another law enforcement officer placed Ms. Simpson's hat back on her head.
24. Deputy Salum and other law enforcement officers who were present during this incident witnessed Barrett beating Ms. Simpson but did nothing to stop the beating nor did they intervene as Ms. Simpson was being beaten.
25. After inflicting the first few punches on Ms. Simpson, Barrett ordered Ms. Simpson to proceed to another part of the jail to perform a breathalyzer test.

26. Ms. Simpson had never been arrested before and did not understand why she was being asked to perform the tasks, so she asked questions of Barrett as to why she had to perform those tasks.

27. After explaining to Barrett that she had not been arrested before and trying to understand why she had to perform the tasks, Barrett snatched Ms. Simpson by the hair, ripping a chunk of her hair out.

28. Barrett then slammed Ms. Simpson's head against a concrete wall at least three times.

29. Ms. Simpson was bleeding from her head and face and suffered extensive injuries, including a concussion from the beating.

30. Barrett told Ms. Simpson that she could "change the paperwork" and charge her with whatever she wanted to charge her with.

31. Barrett stated to Ms. Simpson, "this is my fucking department."

32. Barrett stated to Ms. Simpson, "I can do whatever I want."

33. On multiple occasions, Ms. Simpson asked to see a nurse because her head was hurting so badly.

34. Ms. Simpson also asked to be allowed to make a phone call to her family on multiple occasions.

35. Ms. Simpson was denied medical attention or the ability to make a phone call upon each of her requests.

36. After Ms. Simpson was released from jail, she went to the hospital to obtain treatment for her injuries.

37. Ms. Simpson took photographs of the injuries that show injuries to her head, face, and body.

38. Ms. Simpson complained to the Elmore County Sheriff and to the Alabama Bureau of Investigations.

39. The Alabama Bureau of Investigations did an investigation, including obtaining a copy of the video footage of the incident involving Ms. Simpson and Barrett.

40. Barrett was fired from her position after the Elmore County Sheriff learned about the Alabama Bureau of Investigations investigation.

41. Ms. Simpson suffered tremendous physical and mental damage and distress as a result of the incident.

## Claims for Relief

### Count I - Violation of Civil Rights Under 42 U.S.C. § 1983
### Excessive Force
(against defendant Whitney Barrett)

42. Ms. Simpson repeats and realleges the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

43. Defendant Barrett acted under color of state law.

44. At all relevant times, defendant Barrett was acting in her official capacity as a Deputy Sheriff employed by the Elmore County Sheriff's Department, wearing her uniform, and exercising her authority as a law enforcement officer.

45. Defendant Barrett's conduct deprived Ms. Simpson of rights, privileges, or immunities secured by the Constitution and laws of the United States.

46. Ms. Simpson had a clearly established constitutional right under the Fourth Amendment to be free from excessive force.

47. Defendant Barrett used excessive and unreasonable force against Ms. Simpson by punching her in the eye, punching her in the mouth, grabbing her by the hair and ripping out a chunk of hair, and slamming her head against a concrete wall multiple times, all while Ms. Simpson was handcuffed and posed no threat to Barrett or anyone else.

48. Defendant Barrett's conduct was the proximate cause of injuries suffered by Ms. Simpson.

49. As a direct and proximate result of defendant Barrett's actions, Ms. Simpson suffered physical injuries including a concussion, facial injuries, bleeding from her head and face, and hair loss, as well as pain, suffering, and emotional distress.

### Count II - Violation of Civil Rights Under 42 U.S.C. § 1983
### Failure to Intercede
(against defendant David Salum and other officers)

50. Ms. Simpson repeats and realleges the allegations set forth in paragraphs 1 through 24 as if fully set forth herein.

51. Defendant Salum and other officers observed or had reason to know that excessive force was being used against Ms. Simpson.

52. Defendant Salum and other officers were present during the incident and witnessed defendant Barrett punch Ms. Simpson in the eye; punch Ms. Simpson in the mouth causing her mouth to bleed; grab Ms. Simpson by the hair ripping out a chunk; and slam Ms. Simpson's head against a concrete wall multiple times.

53. Defendant Salum and other officers had a realistic opportunity to intercede to prevent the harm from occurring.

54. The assault by defendant Barrett took place over a period of time sufficient for defendant Salum and other officers to intercede and prevent or mitigate the harm to Ms. Simpson.

55. Defendant Salum and other officers failed to take reasonable steps to intercede.

56. Despite witnessing the assault, defendant Salum and other officers did nothing to stop defendant Barrett from beating Ms. Simpson or to protect Ms. Simpson from harm.

57. The failure to intercede caused Ms. Simpson to suffer injuries.

58. As a direct and proximate result of defendant Salum's and other officers' failure to intercede, Ms. Simpson suffered physical injuries including a concussion, facial injuries, bleeding from her head and face, and hair loss, as well as pain, suffering, and emotional distress.

**Count III - Violation of Civil Rights Under 42 U.S.C. § 1983**
**Supervisory Liability**
(against defendant William E. Franklin)

59. Ms. Simpson repeats and realleges the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

60. Ms. Simpson's constitutional rights were violated.

61. As described above, Ms. Simpson's Fourth Amendment right to be free from excessive force was violated when defendant Barrett repeatedly assaulted her while she was handcuffed and in custody.

62. Defendant Barrett acted with impunity in an environment in which he was not adequately trained, supervised, or disciplined by Defendant Franklin, in this case and as a matter of practice.

63. Defendant Franklin ratified defendant Barrett's unlawful Fourth Amendment activity against Plaintiff and others and, in fact, Franklin authorized a policy that caused Barrett's unlawful conduct.

64. Defendant Franklin acted with gross negligence, recklessness, and/or deliberate indifference to the constitutional rights of Ms. Simpson by failing to provide adequate training, supervision, and discipline of defendant Barrett, and thereby caused the individual defendant deputy sheriff to deprive Ms. Simpson of her clearly established constitutional rights, including her rights to be free from unreasonable searches and seizures, excessive force, and deprivation of liberty without due process of law.

65. Had Defendant Franklin not provided grossly inadequate training, supervision, and discipline of the defendant deputy sheriff, defendant Barrett would not have used excessive force against Ms. Simpson. Defendant Franklin established, and actively conducted ongoing policies and procedures which served to ratify Barrett's unlawful beating of Ms. Simpson and directly supervised the specific acts taken by the defendant Barrett in this case.

66. The grossly negligent, reckless, or deliberately indifferent conduct of Defendant Franklin, under color of state law, violated his clearly established duty to supervise Defendant Barrett, and no reasonable law enforcement supervisor in 2023 would

have believed that grossly negligent, reckless, or deliberately indifferent supervision in the face of actual or constructive notice of misconduct by his/her subordinates was lawful.

67. Defendants Franklin had a policy, custom, or practice that constituted deliberate indifference to Ms. Simpson's constitutional rights.

68. Defendant Barrett's statement that "this is my fucking department" and "I can do whatever I want" suggests a culture of impunity within the Elmore County Sheriff's Office.

69. The fact that multiple officers witnessed the assault without intervening suggests a custom of Defendant Franklin tolerating excessive force.

70. Defendant Barrett was only fired after an external investigation by the Alabama Bureau of Investigations, suggesting Defendant Franklin did not have adequate supervision or discipline procedures in place.

71. The policy, custom, or practice was the moving force behind the constitutional violation.

72. Defendant Franklin's failure to properly train and supervise their deputies regarding the use of force allowed defendant Barrett to believe she could act with impunity, resulting in the violation of Ms. Simpson's constitutional rights.

73. Defendant Franklin's failure to properly train and supervise his deputies regarding the use of force allowed Defendant Salum and other law enforcement officers who were present to believe Barrett could act with impunity, resulting in the violation of Ms. Simpson's constitutional rights.

74. Defendant Salum and, on information and belief, other law enforcement officer present at the time, including defendant Barrett, had prior incidents of excessive force.

75. Defendant Franklin was aware of his officer's prior incidents of excessive force but hired Salum and others anyway and provided inadequate training programs regarding use of force.

### Count IV - Assault and Battery
### State Law Tort Claim
(against defendant Whitney Barrett)

76. Ms. Simpson repeats and realleges the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

77. Defendant Barrett made an intentional, unlawful offer to touch Ms. Simpson in a rude or angry manner under circumstances creating a well-founded fear of imminent peril.

78. Defendant Barrett approached Ms. Simpson in an aggressive manner while Ms. Simpson was handcuffed and unable to defend herself, creating a reasonable fear of imminent harm.

79. Defendant Barrett had the apparent present ability to effectuate the attempt if not prevented.

80. Defendant Barrett was in close physical proximity to Ms. Simpson and had the physical ability to carry out the threatened harm.

81. Defendant Barrett intentionally touched Ms. Simpson in a hostile manner.

82. Defendant Barrett intentionally and unlawfully punched Ms. Simpson in the eye, punched Ms. Simpson in the mouth, grabbed Ms. Simpson by the hair ripping out a chunk, and slammed Ms. Simpson's head against a concrete wall multiple times.

83. These actions were carried out in a hostile and angry manner, without legal justification, and caused physical injury to Ms. Simpson.

84. As a direct and proximate result of defendant Barrett's assault and battery, Ms. Simpson suffered physical injuries including a concussion, facial injuries, bleeding from her head and face, and hair loss, as well as pain, suffering, and emotional distress.

### Count VI - Outrage/Intentional Infliction of Emotional Distress
(against defendant Whitney Barrett)

85. Ms. Simpson repeats and realleges the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

86. Defendant Barrett's conduct was intentional or reckless.

87. Defendant Barrett intentionally punched Ms. Simpson in the eye, punched Ms. Simpson in the mouth, grabbed Ms. Simpson by the hair ripping out a chunk, and slammed Ms. Simpson's head against a concrete wall multiple times, all in response to Ms. Simpson mistakenly addressing her as "sir."

88. The conduct was extreme and outrageous.

89. Defendant Barrett's conduct in repeatedly assaulting a handcuffed detainee for a minor verbal misunderstanding was extreme, outrageous, and beyond all bounds of decency in a civilized society.

90. Defendant Barrett's threats that she could "change the paperwork" and charge Ms. Simpson with whatever she wanted, along with her statements that "this is my fucking department" and "I can do whatever I want," further demonstrate the extreme and outrageous nature of her conduct.

91. Defendant Barrett's actions caused emotional distress.

92. The trauma of being violently assaulted while helpless and in custody by someone in a position of authority caused Ms. Simpson severe emotional distress.

93. The emotional distress was severe.

94. Ms. Simpson suffered severe emotional distress as a result of being violently assaulted while handcuffed and in custody, which would cause severe emotional distress to any reasonable person.

## **PRAYER FOR RELIEF**

Ms. Simpson respectfully requests that this Court enter judgment in her favor and against defendants, and grant the following relief:

1. Compensatory damages against all defendants in an amount to be determined at trial for physical injuries, including a concussion, facial injuries, bleeding, and hair loss; medical expenses; physical pain and suffering; and mental and emotional distress.

2. Punitive damages against all defendants in an amount to be determined at trial to punish defendants for their willful, malicious, and reckless disregard for Ms. Simpson's constitutional and legal rights and to deter similar conduct in the future.

3. Reasonable attorneys' fees and costs pursuant to 42 USCS § 1988.

4. Such other relief as the Court deems just and proper.

## JURY DEMAND

Ms. Simpson demands a trial by jury on all issues so triable.

Respectfully submitted this 30th day of October 2025.

*/s/ Joseph Mitchell McGuire*
Joseph Mitchell McGuire (MCG044)
*McGuire & Associates, LLC*
31 Clayton Street
Montgomery, Alabama 36104
334-517-1000 (voice)
334-517-1327 (fax)
jmcguire@mandabusinesslaw.com

*Attorney for Plaintiff*